UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLANTIC SHORE SURGICAL ASSOCIATES,<br><br>                      Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE/OXFORD, et al.<br><br>                      Defendants. | Civil Action No.: 18-cv-9506 (PGS)(DEA)<br><br>**MEMORANDUM AND ORDER** |

**SHERIDAN, U.S.D.J.**

      This matter comes before the Court on Defendants United Healthcare Services, Inc.[1] and Atria Senior Living Inc.'s motion to dismiss Plaintiff Atlantic Shore Surgical Associates' complaint, (ECF No. 12). This case arises from a dispute over nonpayment of medical services. Plaintiff Atlantic Shore Surgical Associates ("Atlantic") is a company that provides healthcare services in New Jersey. (Compl. at ¶ 1; ECF No. 1). On October 28, 2015, Jonathan Yrad, M.D., employed by Atlantic, performed extensive surgery on nonparty P.H. (*Id.* at ¶¶ 18-19).

      P.H. received health coverage through a self-insured plan funded by Defendant Atria Senior Living. (*Id.* at ¶ 15). The plan is administered by Defendant United Healthcare Services Inc. ("United"). (*Id.*). Because Plaintiff was an out of network medical provider, it contacted United to receive an authorization to render medical services to P.H. (*Id.* at ¶ 17). Plaintiff received an authorization under authorization number 9041448600 from United.[2] (*Id.*) Plaintiff

---

[1] At oral argument, the parties clarified that the United Healthcare Services, Inc. had been improperly plead as United Healthcare/Oxford.
[2] At oral argument, Plaintiff informed the Court that it had received only a verbal pre-authorization from Defendants. Plaintiff has not provided any documented pre-authorization to the Court.

1

then performed the surgery on P.H. (*Id.* at ¶ 18). After completion of the surgery, Plaintiff billed United $111,716.08. (*Id.* at ¶ 23). United paid only $6,004.14 toward the charges, leaving a balance of $105.711.94. (*Id.* at ¶ 24).

On March 30, 2018, Plaintiff filed this Complaint in New Jersey Superior Court against Defendants seeking reimbursement for medical services it provided to P.H. Plaintiff asserts claims for breach of contract, promissory estoppel, account stated, and fraudulent inducement. On May 21, 2018, Defendants removed the case to this Court, based on diversity jurisdiction. (ECF No. 1). Presently before the Court is Defendants' motion to dismiss for failure to state a claim (Fed. R. Civ. P. 12(b)(6)). Defendants additionally argue that Plaintiff's claims must be dismissed because: (1) Plaintiff has not sufficiently plead the existence of a principal/agent relationship between defendant Atria and defendant UnitedHealthcare/Oxford; and (2) Plaintiff's state law claims are preempted by ERISA.

I.

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal,* 556 U.S. at 678-79; *see also Morse*

*v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir.), *cert. denied, Forbes v. Semerenko*, 531 U.S. 1149 (2001).

II.

Defendants argue that, because the plan is an employee welfare benefit plan, it is governed by ERISA, and as such, Plaintiff's claims are preempted by ERISA. In response, Plaintiff argues that its state-law claims arise outside of the plan, and thus are not preempted by ERISA.

"ERISA possesses 'extraordinary pre-emptive power.'" *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 293 (3d Cir. 2014) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). ERISA provides for two types of preemption. Under ERISA's civil enforcement provision, Section 502(a), "state law causes of action that are within the scope of . . . § 502(a) are completely pre-empted." *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004) (quotation omitted). Section 514(a) states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" as defined under the Act. 29 U.S.C. § 1144(a). "Complete preemption under § 502(a) is a 'jurisdictional concept,' whereas express preemption under § 514 is a 'substantive concept governing the applicable law.'" *In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir. 1999) (quoting *N.J. Carpenters v. Tishman Constr. Corp.*, 760 F.3d 297, 302 (3d Cir. 2014)). "Unlike ordinary preemption, which would only arise as a federal defense to a state-law claim, complete preemption operates to confer original federal subject matter jurisdiction

3

notwithstanding the absence of a federal cause of action on the face of the complaint." *Bauman v. U.S. Healthcare, Inc. (In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir. 1999). "The Supreme Court has held that in enacting the civil-enforcement provisions of section 502(a) of ERISA, Congress intended to completely preempt state law." *Id.* In *Baumann*, the court explained it was necessary to distinguish between Sections 502(a) and 514(a), explaining "State-law claims that are subject to express preemption are displaced and thus subject to dismissal . . . Claims that are completely preempted are 'necessarily federal in character,' and thus are converted into federal claims." *Baumann*, 193 F.3d at 160.

In *Pascack Valley Hosp., Inc* and *N.J. Carpenter*, the courts, in determining whether a claim was removable, and thus completely preempted under Section 502(a), explained, "a claim is completely preempted, and thus removable, under ERISA § 502(a) only if: (1) the plaintiff could have brought the claim under § 502(a); and (2) no other independent legal duty supports the plaintiff's claim." *N.J. Carpenters*, 760 F.3d at 303.

The Court first examines whether Plaintiff's claims are completely preempted by Section 502(a), ERISA's civil enforcement provision. For complete preemption to apply, both prongs must be satisfied. *Id.* Plaintiff agrees that it lacks standing to bring an ERISA claim, as it is an out-of-network provider, and is neither a participant nor a beneficiary under the plan. (*See* Pl. Br., ECF No. 15, at 7). Thus, Plaintiff could not bring its claims pursuant to Section 502(a) of ERISA. Here, Plaintiff's claims are not completely preempted by Section 502(a) of ERISA, because Plaintiff does not have standing to bring a claim under Section 502(a).

Having determined that Plaintiff may not bring a claim under Section 502(a) because it lacks standing, the Court now evaluates whether Plaintiff's state law claims are expressly preempted under Section 514(a) of ERISA. Section 514(a) states that ERISA "shall supersede

any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" as defined under the Act. 29 U.S.C. § 1144(a). "'Relate to' has always been given a broad, common-sense meaning, such that a state law 'relates to an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Menkes*, 762 F.3d at 293-94 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983)). Under ERISA, "[t]he term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144 (c)(1).

"State common law claims fall within this definition and, therefore, are subject to ERISA preemption." *Nat'l Sec. Sys. v. Iola*, 700 F.3d 65, 83 (3d Cir. 2012). Most recently, the Third Circuit noted that "ERISA preempts parallel state law remedies . . . [such as] breach-of-contract claim[s]." *McCann v. Unum Provident*, No. 16-2014, 2018 U.S. App. LEXIS 29638, slip op. at 23 (3d Cir. Oct. 5, 2018); *see also Ford v. Unum Life Ins. Co. of Am.*, 351 F. App'x 703, 706 (3d Cir. 2009) ("State law claims such as . . . breach of contract . . . would ordinarily fall within the scope of ERISA preemption, if the claims relate to an ERISA-governed benefits plan."); *accord Early v. United States Life Ins. Co.*, 222 F. App'x 149, 152 (3d Cir. 2007); *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 278 (3d Cir. 2001). For example, in *Iola*, the court explained that the common law claims were preempted because the claims "'have a connection with' the ERISA plans because they are premised on the existence with those plans." *Id.* at 84. The court further explained, "[t]o prevail on those claims, the plaintiffs would have had to plead, and the court to find, that the plans were in fact adopted." *Id.*

The issues presented in this case are similar to those in *Advanced Orthopedics & Sports Med. Inst. v. Empire Blue Cross Blue Shield*, No. 17-08697, 2018 U.S. Dist. LEXIS 96814, at *2 (D.N.J. June 7, 2018) ("Advanced Ortho."). There, a non-party patient, an insured under a plan

5

governed by ERISA, slipped and fell, and required surgery after a visit to the emergency room. *Advanced Ortho*, U.S. Dist. LEXIS 96841 at *2. The plaintiff performed surgery on the patient, and at some point prior to that surgery, the plaintiff received authorization from the defendant for the patient's admission to the emergency room department. *Id.* at *3. The complaint referenced an authorization number that was used to authorize the surgery. *Id.* The plaintiff submitted a bill to the defendant, who refused to cover the full amount, and provided only a portion of the bill. *Id.* at *3. The plaintiff brought suit, bringing common law causes of action for breach of contract, promissory estoppel, account stated, and fraudulent inducement. *Id.* at *3-*4.

The court found that the Plaintiff's claims were expressly preempted by ERISA and dismissed the complaint, explaining:

> All of these causes of action, Plaintiff contends, relate not to Empire's ERISA plan, but to an "independent" preauthorization agreement that the parties entered into prior to the surgery. However, by disputing reimbursement for a medical procedure performed on a patient insured by an ERISA plan, Plaintiff asserts quintessential ERISA claims. Indeed, Plaintiff takes issue with the reimbursement . . . from [defendant]. In doing so, Plaintiff's claims "seek reimbursement of billed medical charges and relate to challenges to the administration of benefits rather than the quality of the medical treatment performed." *N. Jersey Brain & Spine Ctr. v. Connecticut Gen. Life Ins. Co.*, No. 10-CV-4260 SDW, 2011 U.S. Dist. LEXIS 115757, 2011 WL 4737063, at *3 (D.N.J. Oct. 6, 2011) (internal quotation marks omitted). It is Plaintiff's dispute with this out-of-network reimbursement payment, which is set forth in the terms of the Plan, that underlies its claims. The Court thus cannot analyze Plaintiff's claims without referencing the Plan. In fact, examining Plaintiffs' claims individually makes clear that each one implicates the Plan's terms and thus "relates" to the ERISA Plan. Indeed, in its breach of contract, promissory estoppel, and fraudulent inducement claims, and its claims for statutory violations, Plaintiff asserts that, by pre-authorizing the surgery, Defendant was bound to reimburse Plaintiff at a "usual, customary, and reasonable" rate. As discussed, however, the reimbursement rate that [Defendant] must pay is not dictated by reasonability or fairness, but rather by [Defendant's] out-of-network reimbursement rate. For the third

> count . . . to determine the amount actually due, the Court must
> reference the Plan's out-of-network reimbursement provision.

*Advanced Ortho.*, 2018 U.S. Dist. LEXIS 96814, at *12-14.

Like in *Advanced Ortho.*, the Court here cannot analyze Plaintiff's claims without referencing the plan, as each claim is based on a purported preauthorization which was premised on the existence of an ERISA plan, and Plaintiff argues that this preauthorization itself entitles it to "fair and reasonable rates" for medical services. First, in the breach of contract claim, Plaintiff alleges there was an implied-in-fact contract because, "by authorizing the surgery, [Defendants] agreed to pay the fair and reasonable rates for the medical services provided by Plaintiff and Plaintiff performed said services based upon those terms." (Compl., ECF No. 1 at ¶ 28). In the promissory estoppel claim, plaintiff alleges that "by providing a pre-surgery authorization to Plaintiff, Defendants promised that Plaintiff would be paid for its services at a fair and reasonable rate." (*Id.* at ¶ 34). Finally, in the fraudulent inducement count, plaintiff alleges that "by providing a pre-surgery authorization . . . Defendants induced Plaintiff to provide the medical services . . . [i]nherent in the authorization was the promise to pay Plaintiff the fair and reasonable value for the services provided." (*Id.* at ¶¶ 43-44).

Here, Plaintiff acknowledges that the patient received health benefits through Atria, which is a self-insured plan administered by United. (*Id.* at ¶ 15). Plaintiff contacted Defendant, the who would be providing benefits to the patient through the ERISA plan, to request prior authorization before performing the surgery. (*Id.* ¶ 17). Plaintiff then received an authorization from Defendant under authorization number 9041448600. (*Id.*) Implicit in this authorization was that Defendant would reimburse Plaintiff, pursuant to the plan. (*Id.* at ¶ 25). However, Plaintiff acknowledges that it was an out-of-network provider. (*Id.* at ¶ 14). Thus, Plaintiff is entitled to reimbursement at the out-of-network provider rates.

7

As in *Advanced Ortho.*, Plaintiff is disputing the reimbursement for a medical procedure that was performed on a patient pursuant to an ERISA plan. Accordingly, Plaintiff is asserting "quintessential ERISA claims . . . It is Plaintiff's dispute with this out-of-network reimbursement payment, which is set forth in the terms of the Plan, that underlies its claims. The Court thus cannot analyze Plaintiff's claims without referencing the Plan."[3] *Advanced Ortho.*, 2018 U.S. Dist. LEXIS 96814, at *12. Plaintiff would not have submitted an authorization request to defendant but for the existence of the ERISA plan. Accordingly, it is the existence of the ERISA plan, and defendant's reimbursement pursuant to it, that gives rise to the basis of plaintiff's complaint. For these reasons, the Plaintiff's state law claims relate to an ERISA plan, and are thus expressly preempted.[4]

---

[3] Other courts in this district have denied motions to dismiss based on similar facts, finding that the claims do not "relate to" ERISA plans, because the complaints did not seek damages pursuant to the terms of the ERISA plan. *See Comprehensive Spine Care P.A. v. Oxford Health Ins., Inc.*, No. 18-10036, 2018 U.S. Dist. LEXIS 207782, at *11 (D.N.J. Dec. 10, 2018) ("[N]othing in the Amended Complaint directs the Court to consider the terms of Patient's benefit plan in any way. Instead, the Amended Complaint seeks damages arising from an independent relationship between Plaintiff and Defendants . . . the Court cannot find ERISA preemption where nothing in the Amended Complaint directs the Court to ERISA or an ERISA plan."); *see also Glastein v. Aetna, Inc.*, No. 18-9262, 2018 U.S. Dist. LEXIS 162857, at *4-5 (D.N.J. Sep. 24, 2018) ("[T]he Complaint does not claim that Plaintiff was a contracting party to any ERISA plan. It does not allege that payment is due to him according to the terms of an ERISA plan, or even that any relevant ERISA plan provides reimbursement rates for the out-of-network services provided. To the contrary, the Complaint states that Plaintiff is entitled to recover . . . under an implied-in-fact contract."). However, these cases are inapplicable, where here, as in *Advanced Ortho.*, plaintiff is taking issue with the reimbursement of medical services – thus the ERISA plan, and the reimbursement pursuant to it, is the basis for the complaint.

[4] To the extent that Plaintiff argues that its claims do not relate to an ERISA plan, and is thus similar to *Pascack*, which it alleges held that "a provider has an independent legal right to pursue claims directly against an insurance company for failure to pay billed charges where pre-authorization is obtained," (Pl. Br. at 9), plaintiff's claims must also fail. In *Pascack*, an in-network medical provider entered into a "Network Hospital Agreement" with an independent consultant that "organized a network of hospitals that have agreed to accept discounted payment for medical services." *Pascack*, 388 F.3d at 396. This agreement was connected to a "subscriber agreement", that was entered into by the at issue insurance plan and MagNet, Inc., and this subscriber agreement discussed how Network Hospitals would be paid fir covered services. *Id.* There, the Third Circuit determined that the in-network medical provider's state law claims were based on a legal duty that was independent of ERISA. *Id.* at 402. The Court explained that while the claims were "derived from an ERISA plan . . . [t]he crux of the parties dispute is the meaning of . . .[a separate contract,] the Subscriber Agreement." *Id.* "Thus, unlike in *Pascack*, this Court can only resolve Plaintiff's claims by interpreting the Plan, not any independent contract . . . " *Atl. Shore Surgical Assocs.*, 2018 U.S. Dist. LEXIS 90734, at *16.

8

Defendant additionally argues that any claims against defendant Atria must be dismissed because its claims against Atria in this action are based on plaintiff's allegation that Atria is vicariously liable for United's actions, as United is Atria's agent, and plaintiff has not shown through its pleadings that Atria granted authority to "United Healthcare/Oxford," or that Atria granted United authority to enter into an implied agreement with plaintiff outside of the terms of the contract. (Compl. at ¶ 15). In response, Plaintiff argues that any argument over whether United was an authorized agent for Atria is "nonsensical" because it is clear there was an agency relationship between United and Atria, and discovery will show the existence of such a relationship. Regardless of the existence of an agency relationship between United and Atria, these arguments are moot as Plaintiff's ERISA claims are preempted, and thus any claims Plaintiff would have against Atria are also preempted.

For the reasons stated above, Plaintiff has failed to state a claim under which relief can be granted. Accordingly, Plaintiff's complaint is dismissed.

## ORDER

This matter having come before the Court Defendants Motion to Dismiss of Plaintiff's Complaint (ECF No. 12); and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this __23__ day of January , 2019,

ORDERED that Defendants' Motion to dismiss Plaintiff's Complaint is GRANTED; and it is further

ORDERED that the Clerk of the Court shall correct the caption to show the name of the proper defendant, United Healthcare Services, Inc.

_____
PETER G. SHERIDAN, U.S.D.J.